George Andrews, J.,
delivered the opinion of the Court.
The facts which we find to exist in this cause, are as follows:
The defendant, Jones, purchased of one Thomas Peay, a promissory note for $2,300, purporting to be *315 made by Robert Hardin, for -which. Jones paid Peay two thousand dollars. Hardin denied having executed the note, and pronounced it a forgery; and thereupon, Jones procured a warrant from a magistrate, and had Peay arrested on a charge of forgery. While Peay was thus in custody of the officer, it was agreed between him and Jones, and the complainants in this cause, E. W. Porter and W. H. Cherry, that Porter and Cherry should' give to Jones their joint note for one thousand dollars; and that, in consideration thereof, Jones should direct the release of Peay from custody. This agreement is strenuously denied by the defendant, Jones; but we are unable to escape the conclusion, from the circumstances and evidence in the cause, that such was the understanding of the parties, and that the compounding of the alleged offense, was the real consideration of the note.
In pursuance of this arrangement, Porter and Cherry gave to Jones their promissory note for one thousand dollars; and Peay was, thereupon, by direction of Jones, released from the custody of the officer, and has never been again arrested or prosecuted.
This note being unpaid, Jones commenced an action upon it in the Circuit Court; which action is still pending, and in which three mistrials have been entered, in consequence of the failure of juries to agree upon a verdict.
The bill in this cause, is filed by the defendants in said suit at law; and alleges, substantially, the above facts; and charges that the note is void, in consequence of the illegality of its consideration, and “that, without *316 a discovery of some of tire facts in relation to said illegal contract from said Jones, which are exclusively within his knowledge, and the knowledge of complainants, their defense is greatly trammeled, and a decision in a court of law upon said cause, is not likely to be obtained; and that complainants are greatly annoyed and harrassed by the prosecution of said suit.”
The prayer of the bill is, that the said suit at law may be perpetually enjoined; and for general relief.
The defendant filed a demurrer to the bill, setting forth as grounds of demurrer, First, the existence of an unembarrassed remedy at law; and, second, that it appears by the bill, that the complainants were equally guilty with the defendant, in the illegal transaction; and were, therefore, not entitled to any relief in a court of equity. No objection was taken to the prayer for discovery, upon the ground that it would subject the defendant to a penalty.
The Chancellor overruled the demurrer; and the defendant thereupon filed his answer, admitting most of the material facts above recited; but positively denying that the release of Peay from arrest constituted any part. of the consideration for the said note. The answer is also filed as a cross bill against Porter and Cherry, and was answered by them as such; but the matters of the cross bill and the answers thereto, are not. material to our decision.
As already stated, the fact that the real consideration of the note given by complainants to defendant, was the agreement of the latter to discharge Peay from *317 custody, is established by the evidence in the cause, both circumstantial and direct.
By the statutes of this State, the compounding *of a felony is a crime, punishable with imprisonment in the county jail or in the State prison; and it is not disputed, that, if such compounding be the consideration of a promissory note, such note is absolutely void. Vincent vs. Groom, 1 Yerg., 430.
'The Chancellor decided that the note was void on account of its illegal consideration, and decreed that the defendant be perpetually enjoined from prosecuting any suit thereon, and that the note be cancelled and delivered up.
The first question which meets us in the cause, is that arising upon the demurrer of the defendant, to the jurisdiction of the Chancery Court, upon the ground of the existence of an adequate remedy at law.
The defect in the remedy at law may be, either in some obstruction to the proceedings of the court of law, which the aid of a court of equity is required to remove; or it may lie in the want of power in a court of law to give the final, complete and adequate relief, which is within the power of a Court of Chancery. The latter defect is equally, with the former, a ground of chancery jurisdiction.
If the complainant’s case rests wholly upon the necessity for discovery, to enable him to make his defense at law, then he must show by his bill, that such discovery is material to his defense. But if the relief to which he is entitled, is substantive relief beyond that which a court of law can give upon full proof *318 of all tbe facts, then be need not allege tbe necessity of discovery, as a ground of jiu’isdiction: Almony vs. Hicks, 3 Head, 42.
In the class of cases embracing tbe present one, tbe relief afforded by perpetually enjoining tbe prosecution of suits upon tbe void instrument, and by decreeing it to be cancelled and delivered up, is deemed more efficacious and complete, than any that can be afforded by a court of law.
It is true, that a final judgment for tbe defendant in a court of law, in a suit upon such an instrument, would be a complete settlement of tbe case, and would preclude tbe necessity to tbe defendant, of further relief in regard to it. But tbe plaintiff may not choose to commence such a suit; be may harass tbe maker of tbe instrument, with threats of litigation for an indefinite period, within tbe statute of limitations. Or, if a suit be already commenced, tbe plaintiff may not only harass tbe defendant during tbe progress of the suit, but may, at his pleasure, withdraw it, for tbe purpose of again selecting bis tribunal, and fit time for tbe commencement of new litigation: 2 Story Eq. Jur., secs. 699, 700.
And though the instrument be void upon its face, so .that no suit could, by possibility, be sustained upon it in a court of law, still as its existence may be made use of to harass tbe party, it has frequntly been held, that courts of equity will decree it to be cancelled and delivered up: Jones vs. Perry, 10 Yerg., 59, 83; Almony vs. Hicks, 3 Head, 41; and Johnson vs. Cooper, 2 Yerg., 531; Hamilton vs. Cummings, 1 John., Ch. *319 522. This relief is, however, denied by some of tlie authorities in cases where the instrmnent is void upon its face: 2 Story Eq. Jur., sec. 700, a, and cases there cited. But the jurisdiction 'of courts of equity, to decree the cancellation of void instruments, where, as in this case, the invalidity does not appear upon the face of the instrument, even though a defense may be made at law, is now too well settled for dispute. And the jurisdiction of the court of equity - in such cases, resting upon its capacity to administer more effectual relief than can .be afforded by a court of law, it is not ousted by the fact that the holder of the instrument, may have been most diligent in commencing his suit.
It is urged as an objection to the jurisdiction of the Chancery Court, that the Circuit Court having first obtained jurisdiction of the 'case, its right to determine it is exclusive, and cannot be interfered with by a court of equity. This principle is frequently applied in cases of conflict of jurisdiction, between two independent and equal tribunals exercising a jurisdiction of a similar nature. Such was the case of Taylor vs. Caryll, 20 How., 583, cited by defendant’s counsel; but it has no application to a case like the present, where the jurisdiction of the one tribunal, has its sole foundation in the inability of the other to do complete justice between the parties. Suits pending in courts of law, are enjoined by process from courts of equity every day; and the prior jurisdiction of the legal tribunal has never been considered as an objection to the jurisdiction in equity. The relief sought *320 in the Chancery Court, is in its nature, substantially different from the matter of defense set up in the court of law.
As we rest the jurisdiction of equity in this case, upon its capacity to afford more efficacious relief than a court of law can administer, and not upon the necessity for discovery, we do not discuss the objection that the allegations of the bill in regard to the necessity for discovery, are not sufficient to give the court jurisdiction.
No such remedy at law existed in this case as would deprive the Court of Chancery of jurisdiction, if the complainants have shown an equitable title to relief.
A question involved in greater uncertainty and conflict remains. That the note, in consequence of the illegality of its consideration is' void, and that any party to the transaction, claiming a right of action through it, would be promptly and peremptorily repelled from the halls of justice, is too well settled to require discussion. But will a court of equity, the parties to the note being particeps criminis and in pari delicto in the illegal transaction, afford its active interposition to set aside and cancel the illegal contract?
That he who asks equity, must do equity, and that those only shall receive the active aid of courts of justice, who approach with clean hands, are maxims sound both in law and morals. And if judges were permitted to base their decisions upon the inevitable disgust produced by the conduct of a party who stretches forth miry hands towards the court, and proclaiming his own criminality, *321 bases upon it a claim for the active interposition of the court in his behalf, without regard to the dictates of natural justice, the course to be pursued would be clear.
But while the rules of law which courts are bound to enforce in civil cases, have reference primarily, to the protection and enforcement of private rights, they are also subservient to the governing principle, that the safety and best interests of the community are paramount to any private interest.
Therefore it is, that there are many cases in which, were the rights or interests of the parties only concerned, courts would absolutely refuse them aid; yqt, as the public good demands a decision upon their claims, the courts will entertain the cause anck.make the decision. The decree is made .upon the facts and the law of the private right; but the community is a quasi party to the cause; and for the protection of the community, courts may overlook the individual turpitude which has forfeited the private right, and make such decision, consistent with the public interests, as they would have made had the party been innocent.
From these principles, it follows, and thus it has been held, that the active interposition of equity to set aside and cancel an illegal contract, is matter of sound discretion in the Court, and not of absolute right in .the party.
The inquiry is, has the complainant made such a case as would, were he innocent, entitle him to relief? And if so, does the best interest of society require that relief shall be afforded, notwithstanding the guilt of the party? If not, then the Court will refuse its aid, and will leave *322 the parties in whatever difficulties their conduct may have involved them.
I do not deem it necessary to go into an extended analysis of authorities outside of our own State, in regard to the general rule, which has been so often discussed by the courts' of this country and of England. The rule is limited so far as this: that courts will not generally — perhaps never, unless under statutory provisions,. or where one of the guilty parties has been also the victim of outrageous fraud or oppression — interfere to set aside a sale or delivery of property or money, which has been made and completely executed, in the course of the illegal transaction. If one has freely parted with the title to, or possession of, property upon an illegal or immoral consideration, courts ordinarily consider the parties in equal guilt; and a guilty party being in pari deliato, shall never invoke the aid of the courts to have it restored to him. Much as the community is interested to discountenance immoral and illegal contracts, its interests will not be subserved by setting aside executed contracts and unsettling legal titles: Smith’s Lead. Cases, vol. 1, pt. 1, p. 638; Yerger vs. Rains, 4 Humph., 259.
But, where the illegal contract is still executory, and the public interests will be promoted by setting it aside, then in the exercise of their sound discretion, courts of equity will grant relief.
Judge Story states the rule thus: “In general, (for it is not universally true,) where parties are engaged in illegal agreements or other transactions, whether they *323 are mala prohibita or mala in se, courts of equity, following the rule of law as to participants in a common crime, will not, at present, interpose to grant any relief; acting upon the known maxim, in pari delido potior est conditio defendentis et possidentis. But in cases where the agreements or other transactions are repudiated on account of their being against the public policy, the circumstance that the relief is asked by a party who is particeps criminis, is not in equity material. The reason is, that the public interest requires that relief should be given, and it is given to the public through the party:” 1 Eq. Jur., section 298.
That these positions are maintained by the general current of authorities, I think is clear. And in considering them, I have not overlooked the fact that decisions upon usurious securities and upon gaming contracts, have but a qualified authority; for the reason that, in the first, the circumstances of necessity or of oppression supposed to surround the borrower, have usually been supposed to relieve him from the imputation of being in pari delicto; and cases of gaming and wagering contracts, are frequently accompanied by circumstances of outrageous fraud; and the decisions upon them are also more or less affected by considerations of the general policy of the statutes allowing property lost at gaming to be recovered back. But these two classes of cases aside, there is no lack of authority to sustain the principles above laid down.
It is necessary, however, to examine the authorities in our own State, and see whether their weight is in favor of these positions.
*324 The first case occurring in our own reports, is that of Johnson vs. Cooper, decided in 1831, by Judge Whyte: 2 Yerg., 524. In that case, the complainant having staked a tract of land upon a game of ' cards, and lost, conveyed it to the winner, and . afterward filed- his bill for the purpose of setting aside the conveyance. The Court granted the • relief, basing its decision, apparently, upon the policy of the statute, which made void all gaming contracts, and all conveyances of land or other property, made: to satisfy or secure • money won by gaming.
In Allen vs. Dodd, 4 Hum., 132; Yerger vs. Rains, 4 Hum., 259; Smith vs. Stephens, 5 Sneed, 253; and in Simmons vs. Kincaid, 5 Sneed, 454, it is held, that, independently of statutory authority, property lost upon a wager or gaming contract, or sold in violation of law, cannot be- recovered back by the loser or. vendor, by the interposition of the courts. •
The bill in Weakly vs. Watkyns, 7 Humph., 356, was filed by the maker . of a note, given upon consideration of an election wager, to .have the note delivered up and cancelled, and, to have a judgment which had been obtained thereon against the security to the note, enjoined. It was held, that relief could not be given, upon the broad ground that equity would not aid either party to an illegal agreement. Judge Turley, who delivered the opinion of the Court, does so in very few words, and cites no authorities from our own State or elsewhere. Judge Turley says: “No court of chancery will entertain a bill, to cancel an obligation, the consideration of which was a violation of chastity, com *325 pounding a felony, the smuggling of goods in violation of the revenue laws, gaming, false swearing, etc.”
In Giddens vs. Lea, 3 Hum., 133, a note was given by the complainant, upon consideration of a wager; and a judgment thereon was recovered against the complainant, after due notice and Appearance, without any defense being interposed. The bill was filed to enjoin the judgment; and the bill was dismissed in the Supreme Court, upon the ground of the laches of complainant, in failing to make defense at law.
In Rucker vs. Wynne, 2 Head, 618, the bill was filed to have a gaming security delivered up and can-celled. The security had been obtained from the complainant by the grossest fraud and imposition, in connection with the gambling transaction. McKinney, J., delivered the decision of the Court, in a careful and elaborate opinion, holding, that, on grounds of public policy, the Court would interfere to set aside the security. Weakly vs. Watkyns is commented upon, and expressly disapproved — Judge McKinney saying that that case was hastily considered, and that, though Weakly vs. Watkyns might be distinguished from the case then before the Court, by the element of most atrocious fraud which characterized the latter, yet he was inclined to rest the decision upon the distinct principle announced in Johnson vs. Cooper, that public policy required that contracts of that nature should be can-celled by the courts.
It was held in Simmons vs. Kincaid, 5 Sneed, 450, that where a slave had been conveyed as the consideration of compounding a felony, the Court would not *326 set the sale aside at the instance of one joint owner, who, being of full age, participated in the sale; but would rescind it as to the shares of those who signed the bill of sale while they were infants.
In Williams vs. Talliaferro, 1 Cold., 38, the bill was filed by a judgment creditor of one Sharp, to subject to his judgment, real estate which Sharp had conveyed in consideration of a wager. The Court held, that, by statute, every lease or conveyance of land made upon a gaming consideration, is absolutely void; and therefore, the creditors of Sharp had a right to subject his land so conveyed, to the payment of their debts. McKinney, J., says, that Sharp, himself, might have gone into equity to have the deed cancelled as a cloud upon his title; but he does not allude to the case of Allen vs. Dodd, 4 Hum., 131, which decides that betting upon elections is not within the statutes on the subject of gaming, nor to the principle decided in that case, and in Yerger vs. Rains, 4 Hum., 259; Smith vs. Stephens, 5 Sneed, 253; and in Simmons vs. Kincaid, 5 Sneed, 454; that independantly of statutory authority, property lost upon a wager, or sold in violation of law, cannot be recovered back. It might, perhaps, be held that, in such a case, the creditors would have more extensive rights than the debtor himself.
Hale vs. Sharp, 4 Cold., 275, was a case in which it appeared that the complainants had borrowed of defendant, $700, in Confederate treasury notes, for which they gave him their note, and executed a deed of trust to secure the loan. The trustee being about to sell the land in pursuance of the power, the bill was filed *327 to enjoin the sale, and for general relief. This Court decreed, that the note and trust deed were void, and perpetually enjoined the sale. One ground for the interference of the court stated by Hawkins, J., in the opinion of the Court, was, that equity regards the borrower as acting under oppression, and impelled by hardship or necessity, and therefore, though in delicto, not in pari delicto with the lender; but' the decision is not based upon this distinction. I am of the opinion myself, that this last distinction has been often pushed further than justice or the facts would warrant.
Upon these authorities, the question can, perhaps, hardly be considered as settled in this State; but I think that the weight of authority is in favor of the jurisdiction of courts of chancery to decree the delivery and cancellation of securities like the one now in question.
But, upon principle, and the high authority of Judge Story, and of many courts, both in America and in England, I am satisfied that the jurisdiction must be sustained in those cases, in which it is found that the public interest will be subserved by the setting aside and cancellation of the illegal contract.
And I think that contracts like the one in the present case, which are not only illegal as made in violation of statutory law, but are in the highest degree contrary to public policy, as tending to demoralize the community, and to corrupt the channels of’ public justice, can be more effectually discouraged, by setting them aside altogether, than by simply leaving the parties to the remedies of a court oi law. A party contemplating an illegal or immoral contract, may be wil *328 ling to take the risks of its enforcement in a court of law, trusting to the chances of failure of proof, or to the uncertainties of a jury trial. But he will be much less likely to complete the corrupt transaction, if he knows, that, not only will the law, upon full proof of the circumstances, refuse to aid him; but that a court of chancery will demand of him a sworn disclosure of the facts, and will- actively interfere to prevent his realizing the fruits of his corruption.
The conclusion is, that the decree of the Chancellor is correct, and must be affirmed.